OPINION
Appellant, Sherry Cloud, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting legal custody of her two children to their father, Daniel Cloud ("Daniel").
On September 28, 1993, the Butler County Children Services Board ("BCCSB") filed a complaint alleging that Amanda and Tyler Cloud were dependent children following the suspicious death of their brother, Nicholas. Nicholas died on September 28, 1993 due to "a trauma enclosed head injury," the alleged result of "shaken baby syndrome." At the time of Nicholas' injury, he, Amanda, and Tyler were residing with appellant and her boyfriend, Jacques "Jocko" Robinson ("Robinson").[1] Amanda and Tyler were removed from appellant's home pending a criminal investigation into Nicholas' death.[2]
On September 28, 1993, the trial court granted temporary custody of Amanda and Tyler to BCCSB. On October 1, 1993, the trial court granted temporary custody of the children to Daniel and awarded appellant supervised visitation. Subsequently, on February 8, 1994, the trial court entered a no contact order providing that appellant and Robinson were to have no contact of any kind with the children. On February 8, 1994, the trial court granted temporary custody of the children to their maternal grandmother, Mary Greenwood ("Greenwood"), pursuant to Daniel's request, and awarded Daniel reasonable visitation.
At some point during the course of the dependency proceedings, appellant and Daniel were divorced pursuant to a judgment entry dated May 19, 1994.[3] The parties' union produced three children, Amanda, Nicholas, and Tyler. At the time of the parties' divorce, Nicholas was deceased. The judgment entry granting the parties a divorce did not address custody matters because the children, Amanda and Tyler, were under the jurisdiction of the Butler County Court of Common Pleas, Juvenile Division. The Domestic Relations Division therefore referred custody issues to the Juvenile Division.
On June 2, 1995, Daniel filed a motion requesting legal custody of the children. On August 16, 1995, following two hearings, the trial court awarded legal custody of Amanda and Tyler to Daniel and granted visitation privileges to appellant. Appellant's subsequent objections to the trial court's decision were overruled on September 29, 1995. Appellant now appeals, setting forth the following assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE MOTHER, APPELLANT, WHEN IT FOUND THAT THE DIRECTIVES OF OHIO REVISED CODE HAD BEEN MET FOR CHANGE OF CUSTODY.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER, APPELLANT, WHEN IT STATED THE BEST INTEREST OF CHILDREN FAVORED AWARDING CUSTODY TO FATHER, APPELLEE.
In her first assignment of error, appellant contends that the trial court erred by finding that the requirements for a change of custody had been met. Appellant argues that the trial court erred by changing custody from one parent to the other because the juvenile court did not first find that there had been a significant change of circumstances since the previous custody order which would support a change of custody. Appellant also argues that the evidence is insufficient to establish that any harm in taking the children away from her has already occurred. Appellant's argument is without merit.
When a juvenile court enters a decision regarding the allocation of parental rights and responsibilities pursuant to R.C.2151.23 and 2151.353, it must do so in accordance with R.C.3109.04. In re Poling (1992), 64 Ohio St.3d 211, paragraph two of the syllabus. R.C. 2151.353(A)(3) authorizes a juvenile court to award legal custody of an adjudicated dependent child to either parent in the disposition phase of the dependency proceedings. When exercising its jurisdiction in child custody proceedings, the juvenile court is required to do so in accordance with the provisions of R.C. 3109.04, dealing with the allocation of parental rights and responsibilities. R.C.2151.23(F)(1).
According to R.C. 3109.04(B)(1), when determining the allocation of parental rights and responsibilities for the care of children, the court must apply a best interest of the children standard. It is only where a prior decree allocates the parental rights and responsibilities for the care of children that the court must apply a change of circumstances standard in order to modify the prior decree. R.C. 3109.04(E)(1)(a). Where there is no prior formal award of custody, the juvenile court's decision awarding legal custody of a child to either parent constitutes an initial award of custody, as opposed to a modification of a prior custody determination; a change of circumstances need not be established since the best interest standard applies. In re Wells (1995), 108 Ohio App.3d 41, 44.
 There does not appear to be any definitive test or set of criteria to apply in determining the best interest of a child in parental custody proceedings incident to a dependency action. Thus, in our opinion, the juvenile courts should consider the totality of the circumstances, including, to the extent they are applicable, those factors set forth in R.C. 3109.04(F). There is, however, no statutory mandate that they be expressly considered and balanced together before fashioning an award of custody under R.C. 2151.353(A)(3).
In re Pryor (1993), 86 Ohio App.3d 327, 336.
The record fails to disclose any prior decree allocating the parental rights and responsibilities for the care of Amanda and Tyler. The record indicates that when the parties were divorced pursuant to the judgment entry dated May 19, 1994, the Butler County Court of Common Pleas, Domestic Relations Division, declined to enter an order concerning the allocation of parental rights and responsibilities since the children were under the jurisdiction of the Juvenile Division. Accordingly, the juvenile court's disposition of the children in terms of the dependency proceeding and award of legal custody to Daniel constitutes an initial award of custody, not a modification of a prior decree. Therefore, the best interest standard and not the change of circumstances standard would apply in this situation.
The juvenile court applied the best interest standard and discussed the factors enumerated in R.C. 3109.04(F)(1)(a)-(j) in its decision awarding legal custody of the children to Daniel. Accordingly, we find that the trial court applied the appropriate standard when determining the allocation of parental rights and responsibilities in this case and that since the decision awarding legal custody of the children to Daniel was an initial award of custody, it was not necessary for a change of circumstances to be established prior to the award of custody. See Wells, 108 Ohio App.3d at 44. Appellant's first assignment of error is overruled.
In her second assignment of error, appellant contends that the trial court erred by finding that the best interest of the children favored awarding custody to Daniel. Appellant argues that the preponderance of the evidence does not support an award of custody in favor of Daniel where she was awarded custody under a prior decree.
As discussed in connection with appellant's first assignment of error, the record fails to support, and appellant has failed to present any evidence in support of, her argument that she was awarded custody of the children under a prior decree. Therefore, the trial court properly applied the best interest standard when making a determination as to the allocation of parental rights and responsibilities pursuant to R.C. 2151.353(A)(3).
Appellant essentially argues that the decision of the trial court awarding legal custody of the children to Daniel is not supported by the weight of the evidence. When some competent, credible evidence exists to support the judgment rendered by the trial court, an appellate court may not overturn the trial court's individual findings of fact where they are supported by the manifest weight of the evidence. Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80; Pryor,86 Ohio App.3d at 339. Where there is sufficient evidence to support the trial court's finding that it was in the best interest of the children to award legal custody to their father, a reviewing court will not disturb the trial court's decision in that regard. Pryor,86 Ohio App.3d at 339-340.
Appellant testified that she currently resides with her aunt and uncle and has so resided since July 1994. Appellant stated that since August 1994, she has been employed as a manager at a SuperAmerica convenience store.
Appellant testified that when she was married to Daniel, there was physical violence between the two of them. Appellant stated that Daniel hit her, bit her, and bruised her. Appellant stated that on many occasions Daniel did not feed the children or change their diapers. Appellant also stated that Daniel had mistreated the children, and indicated that Daniel bit Amanda's arm and caused bruises on Amanda.
Appellant indicated that she and her children, Amanda, Nicholas, and Tyler, resided with Robinson in September 1993. Appellant stated that after she moved in with Robinson, he began physically abusing her, but she never observed him abuse any of the children. Appellant testified that she believes Robinson was the cause of Nicholas' death. Appellant testified that she continued to reside with Robinson after Nicholas' death despite enduring physical abuse from him because Robinson had threatened to harm her children, mother, and herself if she were to leave him. Appellant testified that she finally left Robinson in July 1994 and that Robinson has come to her place of employment and stayed in the parking lot for long periods of time while she has been working.
Since July 1994, appellant stated that she has changed and does not depend on anybody to take care of her. Appellant stated that she earns enough money to support herself and her children. Appellant stated that she completed a six week counselling session and is not presently involved in counselling. Appellant stated that she also completed a ten week group therapy session for domestic violence. Appellant testified that she has a boyfriend whom she has been dating for approximately one year. Appellant stated that she does not live with her boyfriend. Appellant stated that her boyfriend does not have children, has been married once, and is employed by Kelly Brothers Roofing as a supervisor and sheet metal roofer.
Appellant testified that since the dependency case began she does not believe that Daniel has been abusive to the children. Appellant stated that she has not seen any bruises or marks on the children after they have been returned from visits with Daniel. Appellant stated that the abuse she described occurred during her marriage to Daniel.
Daniel Cloud testified that he is remarried and resides with his wife and two stepdaughters[4] in a house owned by his mother-in-law.[5] Daniel stated that he has been employed at American Flat Glass for approximately nine months and that he was just promoted to a "lead position."
Daniel stated that in his early teenage years, he was diagnosed as manic depressive and was placed in a psychiatric hospital for a period of time. Daniel indicated that he is not currently on any medication for his manic depression because it is no longer a problem for him. Daniel testified that he completed court-ordered parenting counselling but he still continues to go to the counselling because he feels it is very helpful.
Daniel testified that his marriage to appellant was plagued by physical violence for which both parties were responsible. Daniel stated that during the marriage he was not very responsible and he did not remain employed for long periods of time.
Daniel testified that when he first received temporary custody of his children, he resided with his father. However, Daniel stated that his father decided to remarry and moved to another county. Daniel stated that when his father moved, he was not able to take care of the children and maintain employment so he requested that his ex-mother-in-law receive legal custody until he could become stabilized.
Daniel testified that he does not engage in abusive acts toward his spouse, his children, or his stepchildren now. Daniel testified that the counselling has helped him deal with his problems. Daniel stated that his normal discipline with the children is to sit them in a chair or in their bedroom for a period of time. Daniel also stated that he has accomplished everything he has been asked to do by BCCSB since the dependency case began.
Mary Cloud, Daniel's wife, testified that she and Daniel have visitation with the children every weekend. Mary stated that in her opinion the children really enjoy the visits. Mary stated that Amanda and Tyler seem excited when they come to visit at her home. Mary testified that when it is time for the weekend visit to end, the children indicate that they do not want to leave. Mary stated that on one occasion, Tyler "had to be literally torn off [her] shoulders" in order to be taken back to the temporary custodian's residence. Mary also stated that Amanda will cry before she has to leave and say that she wants to stay. According to Mary, Amanda and Tyler interact with her two children quite well. Mary also testified that she has not had any problems with domestic violence with Daniel. Mary stated that Daniel has never abused her and she has never seen Daniel abuse the children.
Mary Greenwood, appellant's mother and the temporary custodian of the children since February 1994, testified that when she first received the children after they had been living with Daniel, Tyler was uncontrollable. Greenwood stated that Tyler had constant ear infections which had not been treated and that he had an almost total loss of hearing which required surgery to correct. Greenwood stated that Amanda was confused, upset, and did not understand the situation.
Greenwood testified that appellant has changed since she lived with Daniel and Robinson. Greenwood stated that appellant is happy and has pursued many avenues in her life which she had not been able to do before. Greenwood testified that she does not believe that Daniel is capable of taking care of his children, as he has never been their primary caregiver.
Mary Catherine Neeley, appellant's aunt, testified that appellant has lived with her and her husband for approximately one year. Neeley stated that since she has lived in her home, appellant has attended counselling and domestic violence classes. Neeley testified that she has observed appellant's interaction with the children and would describe it as "joy on all parts." Neeley testified that when the children see appellant collecting their things to go back to the temporary custodian's home, they start crying. Neeley stated that she has never observed appellant behave inappropriately with the children.
Heather Purkey-Wells ("Wells"), a social worker employed by BCCSB, testified that she has been involved with Amanda and Tyler's case since June 1994. Wells testified regarding her recommendation that Daniel receive custody of the children. Wells stated that Daniel is prepared to assume custody and BCCSB feels that he is capable of assuming such responsibility. Wells testified that Daniel completed a Children's Diagnostic Center assessment, as required by the case plan, completed parenting classes, and has been involved in individual and family counselling. According to Wells, there is no evidence that Daniel is an inappropriate caretaker for the children.
Fred Miller, the guardian ad litem appointed for Amanda and Tyler, recommended that custody of the children be awarded to Daniel. Miller stated that Daniel has done everything that has been asked of him, he is continuing in counselling even though there is no therapeutic need for it, and his home is now stable. In addition, Miller pointed out that Daniel's wife testified that there is no violence in their home. Miller stated that he is concerned with appellant's history with men and that she had a history of violence with Daniel and Robinson. Miller also stated that even though appellant made a poor choice with Robinson, she chose to remain with him after she believed he had caused the death of one of her sons. Miller also expressed concern about appellant's current boyfriend and the fact that there is not much information regarding him.
Based upon a careful review of the record, we find that the juvenile court's decision to grant legal custody of the children to Daniel Cloud is supported by the evidence. See Seasons Coal,10 Ohio St.3d at 80; Pryor, 86 Ohio App.3d at 339-340. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] The record is unclear as to whether appellant had legal custody of all three children at the time of Nicholas' death.
[2] The record indicates that no formal criminal charges were filed against either appellant or Robinson as a result of Nicholas' death.
[3] The exact date of the parties' marriage is not contained in the record, however, the evidence indicates that the parties were married for approximately four years prior to their divorce.
[4] Daniel's stepdaughters are ages thirteen and two.
[5] Daniel described the arrangement as his mother-in-law resides in this upstairs portion of the house and he and his family reside in the entire downstairs portion of the house. His mother-in-law pays the house payment and he pays the utilities, including phone and cable, for the entire home, including the utilities for his mother-in-law.