IN RE BRAZELL.

(No. 8502786—Decided January 14, 1986.)

Court of Common Pleas of Cuyahoga County, Juvenile Division.

*Edward S. Wade,* for applicant.
*Richard Agopian,* for natural mother.

McKINLEY, J. In 1972, Ruth Brazell gave birth to a son. Ruth was unmarried at the time. She named the child, Michael. In 1973, Ruth filed a paternity action in this court alleging that William Boyd was the father of Michael. Boyd admitted to being the father of Michael. Based upon said admission and further evidence adduced, this court entered a judgment entry establishing the father-son relationship between Boyd and Michael. Soon thereafter, Boyd was ordered to pay child support to Ruth on behalf of Michael. In 1980, this court entered a judgment entry establishing visitation with Michael on behalf of Boyd. On March 29, 1985, Boyd filed with this court an "Application to Determine Custody of Child."

The application filed by Boyd asserts jurisdiction of this court in this matter pursuant to R.C. 2151.23(A)(2). This court accepts jurisdiction on the basis of that section.

R.C. 2151.23(A)(2) sets forth no standards for this court to determine a custody issue as presented by this case. The court must, therefore, look elsewhere for standards. The most significant law available to the court and appropriate in establishing said standards is R.C. 3109.04. The court must, therefore, rely heavily on R.C. 3109.04.

Prior to the evidentiary hearing in this case, two preliminary issues to be decided were presented to the court, as follows:

(1) Is this an original custody proceeding to be governed by R.C. 3109.04(A) and 3109.04(C); or, is this a change of custody proceeding to be governed by R.C. 3109.04(A), 3109.04(B)(1) and 3109.04(C)?

(2) Is the choice of a child over twelve years of age made pursuant to R.C. 3109.04(A) mandatory and, therefore, binding on the court; or, is the choice of a child over twelve years of age made pursuant to R.C. 3109.04(A) one of the factors to be considered by the court in making its decision as to what is in the child's best interest?

The court has reviewed the entire record of this matter since its inception as a paternity action in this court in 1973. Based upon the court's review of the record the court makes the following findings of fact:

(1) In 1973, less than a year after Michael was born, the applicant, Boyd, was adjudged in this court, upon his own admission, to be the natural father of Michael. Boyd was ordered by this court to pay child support to the natural mother, Ruth, on behalf of Michael. While no specific custody order was made, that order of support carries with it the strong, uncontested implication that the court and the natural father acknowledged the natural mother to be the legal custodial parent of Michael.

(2) In 1980, the natural father, Boyd, filed a pleading asking this court to order that he be allowed visitation with Michael. This court granted this visitation. While no specific custody order was made, that request for visitation by the natural father and this court's order granting same carry with them an even stronger, uncontested implication that the natural father and the court acknowledged the natural mother to be the legal custodial parent of Michael.

(3) While no court order has provided explicitly that the natural mother was to be the legal custodial parent of Michael, the natural mother, Ruth, has, with the assistance of Josie Brazell, her mother and the maternal grandmother of Michael, provided a home for Michael and been Michael's primary caretaker ever since the day he was born. No one,

until now, a period of over thirteen years later, has contested that.

Based upon the above findings of fact, it is this court's conclusion of law that, while styled an "Application to Determine Custody," as if an original custody proceeding, this proceeding is in reality a proceeding for a change in custody. It is further this court's conclusion of law that, being a proceeding for a change of custody, R.C. 3109.04(B)(1), in conjunction with R.C. 3109.04(A) and 3109.04(C), sets the standards for the court by which it must be guided in making its decision.

To find otherwise makes no sense. There is an inherent adjustment that a child must make at the time of an original custody order. There is another inherent adjustment of at least equal significance with risks to a child just as serious or even more serious at the time of a change in custody. The General Assembly has recognized this and as a result has enacted R.C. 3109.04(B)(1). In this case, Michael has lived with Ruth, his natural mother, and/or Josie, his maternal grandmother, for his entire life, a period of over thirteen years. To ignore that fact and treat this case as an original custody proceeding, as opposed to a change of custody proceeding, would be an exercise in fantasy, would emphasize form at the expense of substance, would be unfair to everyone, and would certainly not be in the best interest of the child.

As to the second issue, the court quotes the relevant part of R.C. 3109.04(A) as follows:

"* * * The court *may* allow any child who is twelve years of age or older to choose, in an original proceeding on custody and in a proceeding for modification of a prior custody order of the court, the parent with whom the child is to live, unless the court finds that the parent so selected is unfit to take charge or *unless the court finds, with respect to a child who is twelve years of*

*age or older, that it would not be in the best interest of the child to have the choice.* * * *"* (Emphasis added.)

The above language of R.C. 3109.04 (A) clearly is not mandatory. The word "may" is used, rather than the word "shall." The section further goes on to allow the court the discretion to find that the child's choice is not in the child's best interest, in which case the court can refuse to grant the child his or her choice. Therefore, it is this court's conclusion of law that the choice of a child made pursuant to R.C. 3109.04(A) is not mandatory and binding on the court, but that it is one of the factors to be considered by the court in making its decision as to what is in the child's best interest.

In making the above decisions as to the two preliminary issues, the court has relied heavily upon the following cases: *In re Yates* (1984), 18 Ohio App. 3d 95; *In re Ragland* (Aug. 16, 1983), Franklin App. No. 83AP-113, unreported; *Venable* v. *Venable* (1981), 3 Ohio App. 3d 421; and *Stone* v. *Stone* (1983), 9 Ohio App. 3d 6.

It is worthy of note that had the court ruled differently on the first preliminary issue, finding that this is an original custody proceeding rather than a change in custody proceeding, thus invoking the standards of R.C. 3109.04(A) and 3109.04(C), to the exclusion of the standards of R.C. 3109.04(B)(1), the decision in this case by this court would have been the same. As will be discussed later in this opinion, the evidence is such that the court cannot escape the conclusion that the best interest of the child dictates that the custody of Michael be awarded to Ruth, the natural mother.

The matter came on for evidentiary hearing on December 20, 1985. Present in court was the applicant, Boyd, who was accompanied and represented by attorney Edward S. Wade. Also present in court was the natural mother, Ruth, opposing the application, accompanied and represented by attorney Richard Agopian.

The court held an *in-camera* hearing with the child, Michael, counsel for both parties being present. In response to questions from the court, the child indicated his preference to live with his father, stating that his father took him many places during weekend visitations. The child further indicated he perceived he would receive a better education in the Shaker Heights School District, where his father now lives, as opposed to the Cleveland School District, where he currently attends Alexander Hamilton Junior High School. The boy further indicated some trepidation about his present neighborhood, since he had been attacked earlier in the year, and had his jaw broken. The boy stated that he was happy when visiting his father, and that he was happy while living with his mother. He stated he had friends in his present neighborhood, but that in the neighborhood where his father now lives he had to travel five to six blocks in order to interact with other children.

Following this *in-camera* hearing with the child, the court proceeded to take testimony under oath in support of and in opposition to the application. Testifying under oath were Boyd, Ruth and Josie. Also testifying under oath was Jacqueline Abbott, juvenile court home investigator, who had pursuant to court directive investigated the homes of Boyd and Ruth, and who had on three separate occasions since the filing of the application talked with and observed Michael.

Based upon said testimony the court makes the following findings.

The mother, at the time of the child's birth, was unemployed, but is currently employed, leaving the home at 6:30 a.m., and generally returning at 3:30 p.m. On the other hand, the father generally does not return to his home from work until between 5:30 p.m. and 6:00 p.m.

The mother is a single parent, and the father has recently married for the third time. His first marriage lasted one year; the second marriage lasted nine months; and he was married at the time of the hearing for three months.

Although some testimony indicated that there were gangs in the area where the child lived, there was no evidence linking the attack earlier in the year with gang members or activities. Nor was there any testimony that there were not gangs in the area of Shaker Heights where he would be living if this change of custody were granted.

With respect to school achievement, the testimony was that Michael's schoolwork has improved substantially from the previous year. Furthermore, Michael himself, during the *in-camera* hearing, stated that he is doing well in the eighth grade at Alexander Hamilton Junior High, and that his teachers give him excellent attention and assistance with his schoolwork.

Most significant was the testimony of Abbott. Abbott testified that Michael was happy at home with his mother. Abbott also testified that Michael was stable at home with his mother. She further testified that Michael appeared to her to have a good attitude and sound values.

Applying the above findings to the issues of law presented in this case, the court is clearly unable to find, based upon the evidence before the court, that there has been any significant change in circumstances of the parties. The mother is now employed, as opposed to being unemployed at the time the child was born. This is the only changed circumstance of consequence. This change of circumstance clearly favors continuing present custody rather than changing custody and, therefore, supports a denial of the application.

In addition, the evidence does not support a finding that there is any significant danger to the child's physical health or mental, moral or emotional development, in the child's present environment. Although the incident where his jaw was broken is unfortunate, this appears to be an isolated incident.

In *Kraus* v. *Kraus* (1983), 10 Ohio App. 3d 63, the Court of Appeals for Cuyahoga County reversed the trial court's modification of custody from the custodial parent, stating at 70-71:

"The evidence, however, is clearly not sufficient to support a change in custody from appellant to appellee because the evidence adduced does not demonstrate that the physical health, or mental, moral, or emotional development of the parties' children was 'significantly endangered' by their life with their mother, as required by R.C. 3109.04."

In arriving at its decision, the court emphasized the strong presumption which favors retaining a custodial parent, and stated at 65, fn. 4, as follows:

"This presumption [of retaining the custodial parent] has become a cornerstone of public policy regarding child custody questions, due in large measure to the influence of the book, Beyond the Best Interests of the Child, by Goldstein, Freud, and Solnit (The Free Press 1973, 1979). The authors emphasized the importance of continuity of parental figures for children's normal development."

Finally, the court is unable to conclude that the change of custody herein requested would be in the best interest of Michael.

Although there was testimony about the relative advantages of the Shaker Heights School District, vis-a-vis the Cleveland School District, there was no testimony comparing Alexander Hamilton Junior High School where Michael now attends with Byron Junior High School where Michael would attend should the court grant the change of custody herein requested. This is the

middle of a school year. To change schools in the middle of a school year means not only changing buildings, but changing teachers, changing peers and perhaps even changing curriculum content. The adjustment for any child will present considerable risks to that child. In light of Michael's own testimony *in camera* that he is doing much better in his school work this year than last, and further in light of Michael's own testimony *in camera* that his teachers at Alexander Hamilton Junior High take much time and give much effort to assist him with his studies, to grant the change of custody herein requested and cause the adjustment risks to the child inherent therein makes no sense and is contrary to Michael's best interest.

As discussed earlier in this opinion, the court notes that any change of custody requires a significant adjustment on the part of the child as well as on the part of the new custodian. Said adjustment inherently involves significant risks to the child's development. In this case, the prospective custodian has entered into a new marriage. He has been married twice before, the first marriage lasting only one year and the second marriage lasting only nine months. This third marriage is only into its fourth month. The prospective custodian is going through significant adjustments himself, those adjustments required between spouses as a new marriage union develops and hopefully stabilizes. To grant the change of custody herein requested, and thereby add to the adjustment risks inherent in a new marriage the adjustment risks inherent in a change of custody, makes no sense and is contrary to the best interest of the child.

The above concerns, coupled with the father's previous history of short marriages, leads this court to have serious reservations about placing the child in this situation with the father.

In summary, this court is unable to find based upon the evidence before it that there has been any significant change of circumstances of the parties justifying a change of custody. In addition, this court is unable to find based upon the evidence before it that the child is in any significant danger in his present environment justifying a change of custody. Furthermore, this court finds that the evidence before it does not support a finding that the advantages of the change of custody herein requested would outweigh the disadvantages.

In conclusion, this court hereby finds that the evidence before it in this case demands a finding that it is in Michael's best interest that he remain in the custody of his mother, Ruth, and the court hereby makes that finding. The application for custody of Michael filed by Boyd, father of Michael, is therefore hereby denied.

*Motion denied.*