## In re WELLS.

[Cite as *In re Wells* (1995), 108 Ohio App.3d 41.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA95–04–058.

Decided Dec. 26, 1995.

*John F. Holcomb*, Butler County Prosecuting Attorney, and *Kathleen Romans*, Assistant Prosecuting Attorney, for appellee Butler County Children Services.

*Rene M. LaForte*, for appellant.

*Mary K. Dudley*, for appellee John Adams.

*Grace Thompson*, guardian *ad litem*.

KOEHLER, Judge.

Appellant, Bobbie Vinson, appeals an order of the Butler County Court of Common Pleas, Juvenile Division, granting legal custody of her two-and-one-half-year-old daughter, Danielle Wells, to Danielle's biological father, appellee John Adams ("Adams").

Danielle was born October 19, 1992. On April 30, 1993, appellant left Danielle, then six months old, with Michael Wells ("Wells")[1] and his seventeen-year-old girlfriend, Lucinda Lucas ("Lucas"). Appellant testified that she would leave Danielle with Wells two or three nights a week for him to be her father since Danielle had his last name. That same day, Wells left Lucas, leaving Danielle in her care. Wells came back two days later but left again without making any provisions regarding Danielle. On May 6, 1993, Lucas brought Danielle to Urgent Care in Middletown, Ohio because of respiratory problems. Because the whereabouts of both appellant and Wells were unknown, consent for medical treatment or hospitalization could not be given.

On May 10, 1993, appellee Butler County Children Services Board ("BCCSB") filed a complaint in neglect and dependency on behalf of Danielle and obtained temporary custody of her. Danielle was placed in foster care. In June 1993, the trial court found Danielle to be a neglected and dependent child. However, based

---

1. Michael Wells was first thought to be Danielle's natural father. He was not. (During a hearing on February 14, 1995, appellant testified that she gave the name Wells to her daughter because at the time Wells, her then boyfriend, and appellant were planning on getting married.) Appellant then alleged, during a shelter care hearing, that Kevin Vinson was Danielle's natural father. A few months later, however, appellant alleged that Adams was Danielle's natural father. On January 31, 1994, following blood tests, Adams was found by the trial court to be Danielle's natural father.

upon appellant's cooperation and progress in accordance with the case plan prepared by BCCSB, the trial court subsequently terminated BCCSB's temporary custody and granted temporary custody of Danielle to appellant. Appellant was ordered not to remove the child from the state of Ohio pending further review.

On August 12, 1993, the trial court issued a capias for the arrest of Adams for failure to appear in court. Following his arrest and the performance of a blood test, Adams admitted paternity of Danielle. On January 31, 1994, the trial court found Adams to be Danielle's biological father and ordered him to pay child support. No formal award of custody was made at that time. Appellant continued to have custody of Danielle.

In January or February 1994, appellant slipped on a patch of ice and broke her collarbone.[2] Appellant thereafter experienced difficulties in taking care of her children. As a result, the children were taken to appellant's mother in Kentucky, who took care of them until appellant could recover from her injury. A few days later, appellant was ordered to appear before a circuit court in Kentucky, which she did. The circuit court gave temporary custody of appellant's children to one of appellant's siblings. The court granted appellant supervised visitation at her mother's house. During one of these visits, appellant took advantage of her mother taking a bath to take her children and returned with them to Ohio.

On April 11, 1994, Adams filed a motion for allocation of parental rights and responsibilities with regard to Danielle. On April 18, 1994, the trial court granted Adams temporary custody of Danielle. Appellant subsequently moved to Marietta, Ohio with Dowling where she stayed until December 1994. In December 1994, appellant moved to Middletown, Ohio where she lived in a trailer with her son, Dowling, Dowling's husband, and Dowling's younger son.

On May 9, 1994, pursuant to an agreement reached between the Kentucky circuit court and all the parties, the trial court ruled that it would retain jurisdiction in this matter. On July 1, 1994, Adams moved the trial court to grant him legal custody of Danielle. A hearing on the matter was held February 14, 1995. By judgment entry filed March 8, 1995, the trial court found that it was in the best interest of Danielle to be placed in the legal custody of Adams, and, accordingly, granted legal custody of Danielle to Adams.

Appellant timely filed this appeal and raises the following assignment of error:

---

2. At the time, appellant was living in a two-bedroom "apartment" in the Cavalier Motel in Franklin, Ohio, with her two children (Danielle and an older son from a previous relationship); Dosha Dowling, a friend; Darryl Neeley, appellant's seventeen-year-old boyfriend and Dowling's older son; Adam Neeley, Dowling's fifteen-year-old son; and Adams's eighteen-year-old girlfriend.

"The trial court erred to the prejudice of appellant by failing to apply the mandates of Ohio Revised Code Section 3109.04(E)(1)(a) in its modification of the child's prior custodial arrangement."

Appellant argues that the trial court erred in treating the proceedings as an initial custody determination and applying the "best interest" standard of R.C. 3109.04(F)(1). Appellant argues that the proceedings were in fact a modification of a prior custodial arrangement and that the trial court should have applied the change of circumstances standard of R.C. 3109.04(E)(1).

In support of her argument, appellant first contends that "[t]he custodial arrangement of a child cannot be modified where there has been a prior decree establishing the allocation of parental rights * * *." Appellant does not identify the decree and we cannot speculate which trial court's decree appellant is referring to. We note in this case, however, that there was no formal award of custody by the trial court until March 8, 1995. We therefore conclude that the trial court's March 8, 1995 judgment entry was an initial award of custody which did not require a showing of change of circumstances.

Appellant next contends, however, that when the natural parent of an illegitimate child has reared the child since birth and has maintained sole physical custody of the child for a substantial period of time, the natural parent becomes, by implication, the de facto residential parent of the child for purposes of R.C. 3109.04. Thus, appellant contends that she is Danielle's de facto residential parent and cites *Knaff v. Gregory* (July 16, 1990), Preble App. No. CA89–12–020, unreported, 1990 WL 98224, in support of her contention.

Several Ohio appellate courts, including this court, have held that when paternity has been adjudicated with a corresponding child support order, a father moving the court for custody will need to meet the change of circumstances standard of R.C. 3109.04(E)(1) for custody modification, because a support order in a paternity motion "impliedly and necessarily" recognizes a mother's legal custody of a child who lives with her. *Ballinger v. Bales* (July 25, 1994), Butler App. No. CA93–06–109, unreported, 1994 WL 386108; *Knaff; In re Brazell* (C.P.1986), 27 Ohio Misc.2d 7, 27 OBR 68, 499 N.E.2d 925; *In re McGowan* (July 17, 1985), Summit App. No. 11973, unreported, 1985 WL 11008; *In re Ragland* (Aug. 16, 1983), Franklin App. No. 83AP–113, unreported, 1983 WL 3653. In all the foregoing cases, however, there was either a considerable amount of time between the paternity adjudication with its corresponding support award and the father's motion for custody, *Knaff* (over four years), *Brazell* (twelve years), *McGowan* (approximately two years), *Ragland* (approximately two years), or there was a relationship, including visitation, between the father and the child before any paternity adjudication and corresponding support award.

In the case at bar, Adams first moved for custody on April 11, 1994, two months and eleven days after the January 31, 1994 paternity adjudication, and again on July 1, 1994, only four months after the paternity adjudication. Adams testified that while he had seen appellant three or four times at his cousin's house where he was then living, they were not dating. Adams also testified that he did not have any contact with Danielle until April 19, 1994 when he obtained temporary custody of Danielle. Appellant testified that when she was about two months pregnant, she told Adams that she was pregnant. Appellant also testified that when she was seven or eight months pregnant, she went to Adams's place of employment and told him that she was pregnant. Adams admitted that appellant came to his place of employment but stated that he did not believe appellant and that appellant did not look pregnant. Appellant further testified that she did not have any contact with Adams after Danielle's birth.

■ Based upon the circumstances described above, we find that all of the foregoing cases are not applicable to the case at bar. We further find that while appellant had sole physical custody of Danielle for a year and a half following Danielle's birth, albeit with at least one interruption, appellant did not have de facto residential custody of Danielle.

Finally, appellant contends that when a juvenile court exercises its jurisdiction to determine the custody of a child alleged to be neglected or dependent pursuant to R.C. 2151.23 and 2151.353, it must do so in accordance with R.C. 3109.04(E)(1) and apply the change of circumstances standard. Appellant cites *In re Poling* (1992), 64 Ohio St.3d 211, 594 N.E.2d 589, in support of her contention.

R.C. 2151.23 provides:

"(A) The juvenile court has exclusive original jurisdiction under the Revised Code:

"(1) Concerning any child who on or about the date specified in the complaint is alleged to be a juvenile traffic offender, or a delinquent, unruly, abused, neglected, or dependent child;

"(2) To determine the custody of any child not a ward of another court of this state;

" * * *

"(F)(1) The juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04, 3109.21 to 3109.36, and 5103.20 to 5103.28 of the Revised Code.

"(2) The juvenile court shall exercise its jurisdiction in child support matters in accordance with section 3109.05 of the Revised Code."

R.C. 2151.353 provides:

"(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

"(1) Place the child in protective supervision;

"(2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified family foster home;

"(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child;

"(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of his parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child."

While R.C. 2151.23(F)(1) states that a juvenile court must exercise its jurisdiction in child custody matters in accordance with R.C. 3109.04, neither R.C. 2151.23 nor 2151.353 specify that the juvenile court must apply the change of circumstances standard before granting legal custody of the child. Nor have we found any cases applying the change of circumstances standard to a juvenile court's award of legal custody of a dependent or neglected child.

In *Poling,* following the parties' divorce, Mrs. Poling was granted custody of their two minor children. In September 1989, a neglect and dependency action on behalf of the children was filed alleging improper parental care. Mr. Poling thereafter obtained temporary custody. In December 1989, the court found the children to be dependent. In September 1990, the juvenile court granted legal custody of the children to Mr. Poling. On appeal, the court of appeals reversed, holding that the juvenile court did not have jurisdiction to enter a change of custody and grant legal custody to Mr. Poling. The Supreme Court reversed, holding that a juvenile court has jurisdiction under R.C. 2151.23(A)(1) and 2151.353 to determine the custody of a child alleged to be abused, neglected or dependent, when that child is not the ward of any court in this state. The Supreme Court held that the jurisdiction included children subject to a divorce decree granting custody pursuant to R.C. 3109.04. *Id.,* 64 Ohio St.3d at 215, 594 N.E.2d at 592–593. The Supreme Court then found that (1) the custodial award to Mr. Poling was a modification of a custody determination granted as part of a divorce proceeding and controlled by R.C. 3109.04(B) (now essentially R.C.

3109.04[E][1][a] ), and (2) the juvenile court failed to make the necessary findings required to modify custody pursuant to R.C. 3109.04(B). *Id.,* 64 Ohio St.3d at 216–218, 594 N.E.2d at 593–595.

Like the trial court, we find that *Poling* is factually different from the case at bar. In *Poling,* the mother had previously been awarded custody by the domestic relations court as part of a divorce proceeding. Any subsequent custodial award was necessarily a modification of custody to which the change of circumstances standard applied. In addition, the Supreme Court was not dealing with a de facto custodial parent situation. Indeed, the issue before the court was purely jurisdictional, as the Supreme Court had to determine whether the juvenile court and the domestic relations court could have concurrent jurisdiction over custody matters. We therefore find that the reasoning and the holding of *Poling* do not apply to the case at bar.

We further find that the trial court's March 8, 1995 judgment entry awarding legal custody of Danielle to Adams was an initial award of custody which did not require a showing of change of circumstances. The trial court accordingly properly applied the best interest standard. Appellant's sole assignment of error is overruled.

· *Judgment affirmed.*

WALSH, P.J., and WILLIAM W. YOUNG, J., concur.