[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Respondent-appellant Gretchen Sherrick appeals from a judgment of the Clark County Court of Common Pleas, Domestic Relations Division, Juvenile Section, awarding custody of her daughter, Cierra Sherrick, to the natural father, appellee Sean Sandoval. Ms. Sherrick contends that the trial judge erred by failing to recuse himself after disclosing his prior representation of Sandoval's father. She further contends that the trial court erred by proceeding as if this case presented an initial custody determination rather than a modification of a prior decree allocating parental rights, and thus by failing to utilize the "change of circumstances" requirement of R.C.3109.04(E)(1)(a). Finally, Ms. Sherrick claims that the decision of the trial court is against the manifest weight of the evidence.
We conclude that the trial judge did not err by failing to recuse himself; Ms. Sherrick has failed to preserve this error for review, and she has also failed to demonstrate prejudice stemming from the judge's prior representation of Mr. Sandoval's father. We also conclude that the trial court appropriately treated this action as though it were an initial custody determination. Finally, we find that the decision of the trial court is not against the manifest weight of the evidence.
Accordingly, the judgment of the trial court is Affirmed.
 I
Cierra Sherrick was born on June 2, 1994. She remained in the physical custody of her mother, Gretchen Sherrick, from her birth until April, 1996. After her birth, Cierra lived with Ms. Sherrick at four different addresses. During this time, the record reveals that Sean Sandoval, Cierra's natural father, attempted to find Ms. Sherrick and the child in order to establish paternity. Ms. Sherrick admits that Mr. Sandoval's efforts were unsuccessful due to the fact that she moved on several occasions. The record does reveal that a hearing on an administrative determination of paternity and child support was held, pursuant to R.C. 3111.20, on February 14, 1996. At that hearing, Mr. Sandoval admitted paternity; however, it appears that he was still unable to locate either Ms. Sherrick or the child.
Cierra continued to reside with her mother until April, 1996, when Ms. Sherrick voluntarily left Cierra with the child's paternal grandmother, Susan Conley. On May 31, 1996, Mrs. Conley filed a complaint for temporary and permanent custody of the child on the grounds that neither of the child's parents were capable of providing for the child. The record shows that Sean Sandoval was served with a summons on the complaint on June 5, 1996. Thereafter, on June 13, 1996, Mr. Sandoval filed a motion for custody and visitation.
The case proceeded to trial before Judge Joseph N. Monnin, presiding judge of the Clark County Court of Common Pleas, Domestic Relations Division, Juvenile Section. The matter was heard over the course of four days: October 29 and September 23, 1996, as well as January 24 and 27, 1997. Ms. Sherrick was not represented by counsel during the first day of trial; however, her counsel filed a notice of appearance on October 25, 1996.
On February 4, 1997, the trial court issued an order naming Mr. Sandoval as the residential parent, subject to the right of the mother and paternal grandmother to visitation. The trial court stated that it considered it to be in the best interest of the child to reside with Mr. Sandoval. In reaching its decision, the trial court relied on the following findings: first, it found that Ms. Sherrick, by her own admission, was unable to provide for the needs of the child during 1996; the court also found that the "mother's mental condition coupled with her lack of stability greatly factors against her continuing to serve as the custodian of the child;" the trial court further found that "there is a disturbing admission by the mother that the child was sexually abused while the child was in the custody of the mother;" in regard to Mr. Sandoval, the trial court found that he is a capable and concerned father, who has suitable housing, and is able to provide for the necessities for the child, as well as for her emotional and physical needs.
Ms. Sherrick appealed from the trial court's decision. Susan Conley did not.
 II
Ms. Sherrick's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN THAT THE JUDGE FAILED TO RECUSE HIMSELF IN THIS CASE.
Ms. Sherrick contends that the trial judge erred by failing to recuse himself from hearing this case. She claims that the judge had previously represented Bernard Sandoval, Sean Sandoval's father, in a custody action against Susan Conley, Sean's mother; thus, she argues that the judge's ability to be impartial could reasonably be questioned. Sherrick cites Canon 3(E) of the Ohio Code of Judicial Conduct as authority for her claim that the trial judge was required to recuse himself.[1]
Ms. Sherrick claims that "prior to the start of the case", Judge Monnin informed the parties to this action that he had previously represented Bernard Sandoval in a custody action against Ms. Conley. However, she fails to refer us to any portion of the appellate record that would support this claim. See App. R. 16(A)(3). Furthermore, the transcript of the custody hearing, which we have reviewed in its entirety, does not support her contention. It is the appellant's responsibility to include all of the evidence in the appellate record so that the claimed error is demonstrated to the reviewing court. Bates Springer, Inc. v.Stallworth (1978), 56 Ohio App.2d 223, 229. Ms. Sherrick cannot rely upon allegations of fact outside the record to support her arguments. Celestino v. Schneider (1992), 84 Ohio App.3d 192, 197. Therefore, we must overrule this Assignment of Error.
Even had Ms. Sherrick properly preserved this argument for appeal, we would be constrained to overrule it. First, she has waived any error for purposes of appeal. Second, she has failed to demonstrate any prejudice resulting from the trial judge's prior representation of Bernard Sandoval.
We first address the waiver of this error. We have held that R.C. 2701.03 [affidavits of bias and prejudice] "provides the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced." Jones v. Billingham (1995),105 Ohio App.3d 8, 11. This holding is based upon the premise that "[t]he Chief Justice of the Supreme Court of Ohio, or his designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." Id., at 11, citing Section 5(C), Article IV, Ohio Constitution. Thus, the "Court of Appeals [is] without authority to pass upon disqualification or to void the judgment of the trial court upon that basis." State v.Frye (Dec. 12, 1997), Clark App. No. 96-CA-118, unreported, quoting Beer v. Griffith (1978), 54 Ohio St.2d 440, 441-42. Therefore, if Sherrick's argument is premised upon a claim that the trial judge was biased or prejudiced, we must conclude that she has failed to follow the proper procedure for disqualification, and we are without jurisdiction to set the trial court's judgment aside on that basis.
If however Ms. Sherrick's claim is based upon the claim that the trial judge acquired knowledge of the facts through the prior representation, we must likewise conclude that she has waived any error. Ms. Sherrick admits that the trial judge "gave counsel and the parties the opportunity to object to him hearing the case," and that she failed to raise any objection. She claims, however, that since she was unrepresented by counsel at that time, she was not in the "same position" as the other parties to make a decision concerning the recusal issue. We cannot agree. We note that Ms. Sherrick did obtain counsel, and was represented during the majority of the evidentiary hearing. We also note that she admits that she failed to raise this issue with her attorney until after the trial court rendered its decision. "An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Douglas
(1989), 66 Ohio App.3d 788, 790.
Ms. Sherrick has also failed to explain how she has been prejudiced by the trial judge's failure to recuse himself. She does argue that, due to the prior representation, the trial judge had knowledge of: (1) Susan Conley's alcohol abuse and ability to care for her children, (2) "the development of Sean Sandoval;" and (3) the prior relationship of Sean and Susan. However, she does not state how these factors affected her.
While any knowledge the trial judge might have had concerning Susan Conley's alcoholism or her ability to raise her own children, or her strained relationship with Sean Sandoval, could conceivably raise a question regarding his ability to be impartial toward Mrs. Conley, there is no indication that it had any effect on Ms. Sherrick's bid for custody. Moreover, the issue of Mrs. Conley's alcoholism was raised by the parties during this custody hearing, and was therefore properly available for the judge's consideration despite any past knowledge he might have had.
Ms. Sherrick does not explain what she means by her statement regarding the trial judge's knowledge of Sean Sandoval's development. It is possible that she is referring to testimony in the record indicating that Sean had become a more mature and responsible person than he had been in the past when the trial judge had represented Sean's father. However, that testimony was presented at the hearing, and thus, was not solely a product of any prior contact the judge may have had with Sean. Additionally, there is no evidence to support, nor does Ms. Sherrick claim, that the judge remained in contact with Sean after the representation of Bernard Sandoval ended, or that he had any opportunity to personally observe Sean as he grew into adulthood.
Therefore, even if we assume the validity of Ms. Sherrick's claims, which are not supported in the record, we cannot conclude that the trial judge's prior representation of Bernard Sandoval impinged upon his impartiality as a judge in this action.
Ms. Sherrick's First Assignment of Error is overruled.
 III
Ms. Sherrick's Second Assignment of Error states:
 THE TRIAL COURT ERRED IN NOT APPLYING THE CRITERIA OF R.C. 3109.04(E)(1)(a) IN THIS CASE.
Ms. Sherrick contends that the trial court erred by proceeding as if this case presented an initial custody determination rather than a modification of a prior decree allocating parental rights. Thus, she claims that the trial court erred by failing to apply the "change of circumstances" criteria contained in R.C. 3109.04(E)(1)(a). In support, Ms. Sherrick cites Rowe v. Franklin (1995), 105 Ohio App.3d 176, for the proposition that a change in physical custody between parents, despite the absence of a prior formal custody decision, constitutes a "modification of the status quo" and is therefore analogous to a custody modification. She also argues that she had implied legal custody of the child by reason of an order requiring Mr. Sandoval to pay her child support; and thus, she argues, the trial court's decision was a modification of a prior custody decree.
Initial custody awards are governed by R.C. 3109.04(B)(1), which requires the trial court to utilize the "best interests of the child" test. However, modifications of prior custody decrees are governed by R.C. 3109.04(E)(1)(a), which prohibits a modification unless the trial court finds "* * * that a change has occurred in the circumstances of the child, [or] his residential parent, * * * and that the modification is necessary to serve the best interest of the child."
We turn first to Rowe, supra, which we find inapplicable to the case before us. In Rowe, the mother retained actual physical custody of the parties' minor child during the pendency of their divorce action. Id. No orders were entered regarding temporary custody or permanent custody until approximately eighteen months after the parties separated, at which time the trial court granted custody to the father. Id., at 178.
In Rowe, the court stated that although the case did not involve a post-decree modification, given the fact that the mother had actual physical custody of the child for an eighteen-month period, the court found "* * * it difficult not to view the trial court's decision as a modification of the status quo and to analogize this situation to a custody modification." Id., at 180. However, the court's decision was not actually based upon the failure to determine whether circumstances had changed. Rather, the court reversed the trial court because it found that the trial court had abused its discretion by placing too much emphasis on the mother's activities, rather than on the best interests of the child. Id., at 186. Thus, the portion of the decision upon which Ms. Sherrick relies is dictum, which we decline to follow.
Moreover, we cannot agree with Ms. Sherrick's contention that the facts in Rowe are similar to those in this case. Indeed, we note only one, albeit debatable, similarity. In Rowe, as in this case, the mother had actual physical custody of the child for a substantial period of time prior to the entry of a custody order; although in this case, it can be inferred that Ms. Sherrick surrendered actual custody to Susan Conley. Unlike in Rowe, where the parties apparently agreed to the custody arrangement, and in fact, signed an agreed entry regarding visitation and support, the facts in this case support a finding that Mr. Sandoval never had an opportunity either to acquiesce in or to contest the custody arrangement until this action was filed by Susan Conley and he learned of the whereabouts of the child. As Ms. Sherrick admits in her brief, Mr. Sandoval made "numerous attempts to find the child and establish paternity," but those attempts were unsuccessful due to the fact that she moved on several occasions.
We next turn to Ms. Sherrick's claim that she had implied custody of the child by reason of an order regarding child support. We note first that the record is devoid of any reference to a prior child custody decree. Furthermore, Ms. Sherrick again fails to refer us to any portion of the record that would support her claim that Mr. Sandoval had been ordered to pay child support to her. As previously noted, Mr. Sandoval admitted paternity during an administrative determination of paternity and support. However, the record is not clear whether he was actually ordered to pay child support at that time, or whether the amount of support was to be set at a later hearing. Thus, we find that Ms. Sherrick has failed to support her argument with appropriate references to the appellate record.
Mr. Sandoval cites us to a case from the Twelfth District Court of Appeals in which that court recognized a line of cases, including one of its own, supporting Ms. Sherrick's claim that when "* * * when paternity has been adjudicated with a corresponding child support order, a father moving the court for custody will need to meet the change of circumstances standard of R.C.3109.04(E)(1) for custody modification, because a support order in a paternity motion `impliedly and necessarily' recognizes a mother's legal custody of a child who lives with her." In reWells (1995), 108 Ohio App.3d 41, 44, Ballinger v. Bales (July 25, 1994), Butler App. No. CA93-06-109, unreported; In re McGowan
(July 17, 1985), Summit App. No. 11973, unreported; In re Ragland
(Aug. 16, 1983), Franklin App. No. 83AP-113, unreported.
However, the court refused, in Wells, to follow this line of cases on the grounds that all of them involved situations in which "* * * there was either a considerable amount of time between the paternity adjudication with its corresponding support award and the father's motion for custody * * * or there was a relationship, including visitation, between the father and the child before any paternity adjudication and corresponding support award." Id., at 44. In Wells, there was no indication that the father had any contact with the child after its birth, and he sought custody approximately two months after the paternity adjudication. Id., at 45. Therefore, although the mother had sole physical custody of the child for a year and a half following its birth, the court did not require the trial court to follow the standard set forth in R.C. 3109.04(E)(1)(a).
Likewise, we cannot conclude that the trial court in this case was required to adhere to R.C. 3109.04(E) in making its determination regarding custody. First, as previously noted, the record does not support a finding that a support order existed. Second, the record does support a finding that Mr. Sandoval had no contact, let alone a relationship, with the child after its birth. However, it does appear that Mr. Sandoval attempted to find the child and Ms. Sherrick in order to forge a relationship. Furthermore, once this action was filed, and Mr. Sandoval was able to locate the child, he immediately filed a motion for custody of the child. Therefore, there was not a large gap between the paternity adjudication and the change of custody. Under the facts of this case, we conclude that the trial court did not err by failing to utilize the "change of circumstances" requirement of R.C. 3109.04(E) when allocating the parties' parental rights.
Ms. Sherrick's Second Assignment of Error is overruled.
 IV
Ms. Sherrick's Third Assignment of Error states as follows:
 THE TRIAL COURT'S CHANGE OF CUSTODY FROM THE NATURAL MOTHER TO THE NATURAL FATHER WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
Ms. Sherrick contends that the trial court's decision to grant custody to Mr. Sandoval was not supported by the evidence. Her argument in support is not entirely clear, but it appears to be based upon three separate issues. First, she argues that the trial court wrongly relied on its erroneous finding that she had "bounced from loving relationship to loving relationship" in regard to her prior relationships with men. Second she argues that the trial court erroneously found that she had moved from "residence to residence in the brief life of the child." Finally, she argues that the trial court erroneously found that "there is a disturbing admission by [Sherrick] that the child was sexually abused while the child was in the custody of [Sherrick]." She apparently contends that since there was no formal finding of abuse, and since none of her male companions was the perpetrator, this factor should not have been considered.
When discussing the deference that is to be accorded to a trial court in child custody disputes, we note that the Ohio Supreme Court has stated as follows:
 `The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct.
 While a trial court's discretion in a custody modification proceeding is broad, it is not absolute, and must be guided by the language set forth in R.C. 3109.04. In addition, the trial court's determination in a custody preceeding is, of course, subject to reversal upon a showing of an abuse of discretion.
Meyer v. Anderson (April 18, 1997), Miami App. No. 96CA32, unreported, citing Miller v. Miller (1988), 37 Ohio St.3d 71, 74, citations omitted.
In Meyer, we further held that "[i]n short, a trial court's decision regarding the custody of children that is supported by competent and credible evidence will not be reversed absent an abuse of discretion," citing Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus. "In determining whether a trial court has abused its discretion, we cannot simply substitute our judgment for that of the trial court." Id., citations omitted. "Rather, an abuse of discretion indicates that the trial court's decision was arbitrary, unreasonable, or capricious." Id.
In determining which parent should have custody of a child, the trial court must consider the best interests of the child. R.C. 3109.04(F). In determining the best interest of the child, the court must consider the relevant factors set forth in R.C.3109.04(F)(1). In this case, there was evidence that the mother was incapable of providing for the child's needs at the time she placed the child with the paternal grandmother. While Ms. Sherrick contended that as of the last hearing date, she had become more stable and was able to provide for the child, we cannot say that the trial court abused its discretion by determining that her lack of stability militated against her ability to serve as the residential parent. See R.C.3109.04(F)(1)(e). Furthermore, there was testimony in the record to support a finding that the child was able to interact with Mr. Sandoval, his wife, and their three children, and that the child was able to adjust to their home. See R.C. 3109.04(F)(1)(c) and (d). There was also evidence to support a finding that Mr. Sandoval would honor, and even encourage, visitation between the child and Ms. Sherrick, while the evidence could also support a finding that Ms. Sherrick had avoided contact between the child and Mr. Sandoval prior to the court's involvement in this matter. See R.C. 3109.04(F)(1)(f). Finally, there was evidence, based upon Ms. Sherrick's own testimony, that the child had been sexually abused by a babysitter while in Ms. Sherrick's custody. See R.C. 3109.04(F)(1)(g), ("whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child").
Moreover, while the trial court did find that Ms. Sherrick had "bounced" from relationship to relationship, and from residence to residence during the child's life, we cannot say that these findings were not supported by the record. We agree that a mother's relationships with men should not be used against her in her bid for custody unless it has a "* * * direct and probable effect * * * on the physical, mental, emotional, and social development of the child". See Rowe v. Franklin (1995), 105 Ohio App.3d 176,179.
However, we conclude that the trial court was justified in relying on these facts as they relate to Ms. Sherrick's ability to provide a stable life for the child. Ms. Sherrick admitted that she was involved in relationships with two men during the child's life, whom she taught the child to refer to, and recognize as "daddy;" despite the fact that Mr. Sandoval was not given the opportunity to introduce himself to the child as her natural father. Furthermore, the evidence shows that Ms. Sherrick had a transient lifestyle; in fact, from the time the child was born, Ms. Sherrick lived in at least six different places, including her car and a campground. We therefore, must conclude that the trial court did not err by considering these factors as they could reasonably be viewed as having a direct impact on the child's mental, emotional and social development. Finally, we believe that the trial court correctly considered the admission by Ms. Sherrick that the child had been sexually abused despite the fact that the child was never formally adjudicated as abused; especially in light of the fact that the lack of a formal adjudication of abuse was due to Ms. Sherrick's admitted failure to report the incident to the authorities.
Based upon our review of the record, we believe that there was competent and credible evidence to support the trial court's decision, and that the judgment is not against the manifest weight of the evidence. Accordingly, Ms. Sherrick's Third Assignment of Error is overruled.
 V
All of Ms. Sherrick's Assignments of Error having been overruled, the judgment of the trial court is affirmed.
YOUNG, P.J., and GRADY, J., concur.
Copies mailed to:
Lisa J. Niles
Cozette Snead
John E. Gould
Hon. Joseph Monnin
[1] Ms. Sherrick fails to specify which portion of this Canon she believes applicable to the facts of this case. Her argument, which centers on her claim that the judge acquired knowledge about the parties through the prior representation, indicates that she relies on the following disqualification provision found in Canon 3(E)(1)(a):
 A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
 (a) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]