This is an appeal from the Scioto County Common Pleas Court, Juvenile Division, judgment granting a petition for custody filed by Brenda Spencer, petitioner below and appellee herein, for custody of Brandi L. Shepherd, who was born on March 12, 1991 to appellee and Alan Shepherd, respondent below and appellant herein.
Appellant assigns the following errors:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY INAPPROPRIATELY APPLYING THE BEST INTEREST OF THE CHILD TEST RATHER THAN THE CHANGE OF CIRCUMSTANCES TEST."
SECOND ASSIGNMENT OF ERROR:
 "THE DECISION OF THE TRIAL COURT IN MODIFYING THE PREVIOUS PLAN ADOPTED BY APPELLANT AND APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Although appellant and appellee never married, they lived together with their child until the fall of 1995. After the parties separated, the child spent significant amounts of time with each parent. During the time appellee worked a night shift, the parties agreed that appellee would pick up the child after school and the child would spend the night with appellant. When appellant acknowledged paternity of the child in a document signed in 1996, the parties agreed that appellant would not pay child support. Problems arose between the parties in June 1997 when appellee stopped working a night shift.
On August 26, 1997, appellee filed the instant petition for custody in the Scioto County Common Pleas Court, Juvenile Division. On September 26, 1997, appellant filed a complaint for custody in the Scioto County Common Pleas Court, General Division. Appellant's complaint was later dismissed.
The Scioto County Common Pleas Court, Juvenile Division heard the matter beginning on November 20, 1997. Appellee's current husband, whom she married in March 1996, testified that appellant sent the child to spend a week with her paternal grandparents without appellee's consent, appellant denied appellee access to the child, appellant was late picking up the child, appellant refused appellee some visits with the child, and appellee had to call police to assist her with picking up the child from appellant. In one incident, appellant's parents refused to answer their door when appellee came to give them antibiotic medication prescribed for the child. In appellee's husband's opinion, the child spent too much time with her paternal grandparents when she should have been spending time with appellant.
The child's fourteen-year-old maternal half-sister testified that when appellant and appellee lived together, appellant yelled at the half-sister, physically punished her, made her play in a hallway, barred her access to a bathroom at night, and told her that she did not deserve to live. The half-sister further testified that appellant became aggressive and loud when he drank alcohol. On cross-examination, the half-sister admitted that she has been suspended from school multiple times. On re-direct examination, the half-sister explained that she has attention deficit disorder and takes Ritalin for that disorder.
Appellee testified that appellant forces her to talk to him through the child, that appellant does not let her see the child's school report cards, and that appellant refuses to answer his telephone. Appellee testified about the incident during which appellant's parents refused to answer their door when appellee and her husband brought antibiotic medication for the child. Sometimes appellee has needed police assistance when picking up the child from appellant. Appellee further testified that appellant has been intoxicated and has driven while intoxicated when children were in his vehicle. Although appellee admitted that appellant never touched her violently, appellee testified that appellant would "tear up the house" when he was drunk.
Appellant admitted that sometimes he drank more alcohol than he should drink. At one point during his testimony, appellant commented about appellee, "the less I have to speak to her, the better off everybody in the world is."
When the trial court interviewed the six-year-old child in chambers, the child stated that she wants to live with appellant and visit appellee. When asked for her reasons, the child said that "daddy spends more time with me and he can help me with my homework." When asked whether appellee helps her with homework, the child said yes. The child noted that she has her own bedroom at appellant's home, but shares a bedroom with her half-sister at appellee's home.
On April 15, 1998, the trial court granted appellee's petition for custody. The court reasoned that appellee was the parent most likely to facilitate visitation and communication with the other parent. The court wrote in pertinent part as follows:
 "6). Each parent has testified that each will obey the Court's order, including orders of custody, visitation, and support. However, from the evidence a different picture is presented. The father testified that he unilaterally stopped allowing Brandi to see the mother, and that he ended permission for the mother to pick up Brandi from the latch-key program which she attended after school. There was corroborating testimony to this from Mr. Spencer (the mother's current husband) and from Mrs. Spencer, the mother. Mr. Shepherd apparently lacks good communication skills. According to Mrs. Spencer, Mr. Shepherd usually will not speak with her on the phone. Instead he puts Brandi (age 6) on the phone and speaks through her. This is an untenable position for this child. To place this six (6) year old child in the position of being a go-between or intermediary for her parents cannot be justified. Mr. Shepherd's attitude in Court was very rigid, especially in his interpretation of any custody/visitation and communication with the mother. Mr. Shepherd screens his calls and testified that he doesn't always want to talk with Mrs. Spencer so he doesn't answer the phone or if he does he uses Brandi as her intermediary. Mr. Shepherd's attitude is that the less I have to speak with her (the mother), the better off the world is. In a system which requires the cooperation of the parties to be successful, it is clear to the Court that Mrs. Shepherd (sic) is the party who is most likely to communicate and work cooperatively with the other parent to provide communication, visitation and companionship pursuant to court order.
* * *
 8). The Court finds that Mr. Shepherd has on occasion denied Mrs. Spencer of her rights of visitation with her daughter. Although there was no court order, there was an agreement in the testimony that at times Mr. Shepherd denied Mrs. Spencer the companionship of her daughter. Mr. Shepherd said he stopped allowing Brandi to see her and he ended the mother's privilege to pick up Brandi from the after-school latch-key program. Mrs. Spencer corroborated this and viewed this as an attempt by Mr. Shepherd to maintain control of the situation through the vehicle of access to Brandi. There was testimony to the effect that the mother had to take the police with her to go and get Brandi from Mr. Shepherd. Mrs. Spencer corroborated this testimony in her testimony about Mr. Shepherd or his father (Mr. James Shepherd, the paternal grandfather) picking Brandi up from the latchkey program.
* * *
 WHEREFORE, based on the foregoing and on the testimony and evidence adduced at hearing, including the expressed wishes of the child, the Court however finds it to be in the best interests of Brandi that her custody vest with her mother, the petitioner herein, Mrs. Brenda A. Spencer, until the further ORDER of this Court. * * *
Appellant filed a timely notice of appeal from the trial court's April 15, 1998 order granting appellee's petition for custody.[1]
 I
In his first assignment of error, appellant asserts that the trial court erred by applying the best interest test rather than the change of circumstances test when deciding whether to grant appellee's petition for custody.
R.C. 3109.04(B)(1) governs initial custody awards and requires trial courts making initial custody awards to apply a "best interest of the child" test.[2] R.C. 3109.04(E)(1)(a) governs modifications of prior custody decrees and prohibits modification unless the trial court finds that a change has occurred in the circumstances of the child or his residential parent and finds that modification is necessary to serve the best interest of the child.[3] Because no prior decree exists concerning custody of the parties' child in the case subjudice, R.C. 3109.04(B)(1) required the trial court to apply "the best interest of the child" test in the case sub judice.
Appellant argues that the trial court should have applied the R.C. 3109.04(E)(1)(a) change of circumstances test despite the fact that no prior custody decree exists. Appellant contends that parties' prior agreement concerning the custody of the child was the equivalent of a prior custody decree. In support of his argument, appellant cites and quotes In The Matter ofWells (1995), 108 Ohio App.3d 41, 669 N.E.2d 887; Knaff v.Gregory (July 16, 1990), Preble App. No. CA89-12-020, unreported; and In Re Ragland (Aug. 16, 1983), Franklin App. No. 83 AP-113, unreported.
Appellee distinguishes Wells, Knaff, and Ragland from the case sub judice by noting that in those cases a prior visitation or child support order by inference vested custody in the parent who was required to grant visitation or who was entitled to receive child support. Because a prior order existed in those cases, the courts applied the R.C.3109.04(E)(1)(a) "change of circumstances" test when the other party sought custody of the child.
We agree with appellee that Wells, Knaff, and Ragland can be distinguished from the case sub judice. In Wells, the court wrote in pertinent part:
 "Several Ohio appellate courts, including this court, have held that when paternity has been adjudicated with a corresponding child support order, a father moving the court for custody will need to meet the change of circumstances standard of R.C. 3109.04(E)(1) for custody modification, because a support order in a paternity motion 'impliedly and necessarily' recognizes a mother's legal custody of a child who lives with her. Ballinger v. Bales (July 25, 1994), Butler App. No. CA94-06-109, unreported; Knaff v. Gregory (July 16, 1990), Preble App. No. CA89-12-020, unreported; In re Brazell (C.P. 1986), 27 Ohio Misc.2d 7, 499 N.E.2d 925; In Re McGowan (July 17, 1985), Summit App. No. 11973, unreported; In Re Ragland (Aug. 16, 1983), Franklin App. No. 83 AP-113, unreported. * * *"
Id., 108 Ohio App.3d at 44, 669 N.E.2d at 889. In Knaff, the court wrote that "while there was no express judicial grant of custody to Gregory [the mother], the court in the paternity action implicitly recognized her legal custody by ordering Knaff to pay child support." In Ragland, the court which heard the paternity action ordered the father to pay child support.
We acknowledge that in Wells, the court recognized two exceptions to the rule established in Ballinger, Knaff,Brazell, McGowan, and Ragland. The Wells court held that despite the fact that a prior child support order exists, the trial court should apply the R.C. 3109.04(B)(1) best interest test rather than the R.C. 3109.04(E)(1)(a) change of circumstances test: (1) if little time elapsed between the child support order and the father's motion for custody; or (2) if there was a relationship between the father and the child prior to the child support order.
We discussed the rule and recognized the time exception inIn The Matter of Webster (Sept. 14, 1993), Athens App. No. 92 CA 1559, unreported. In Webster we wrote as follows:
 "If paternity has been adjudicated with a corresponding support order, and the parents have not lived together during the life of the child, a father petitioning the court for custody will need to meet the standards of R.C. 3109.04(E)(1) for custody modification, because a support order in a paternity action 'impliedly and necessarily' recognizes a mother's legal custody of a child who lives with her. Baldwin's Ohio Domestic Relations Law (1992), 69-70, T 3.04(A); Knaff v. Gregory
(July 16, 1990), Preble App. No. CA89-12-020, unreported; Lucas v. Estes (Feb. 13, 1989), Montgomery App. No. CA 10970, unreported; In Re McGowan (July 17, 1985), Summit App. No. 11973, unreported; In Re Ragland (Aug. 16, 1983), Franklin App. No. 83AP-113, unreported. In all of the foregoing cases, there was a considerable amount of time between the determination of paternity with its attendant support award and the father's motion for custody. Knaff (over four years); Lucas
(approximately four years); McGowan (approximately two years); Ragland (approximately one year); see, also, In re Brazell (1986), 27 Ohio Misc.2d 7, 499 N.E.2d 925 (twelve years). * * *"
In the case sub judice, we find that because no prior child support order exists, neither the rule established inBallinger, Knaff, Brazell, McGowan, and Ragland nor the exceptions recognized in Webster and Wells are relevant. The exceptions to the rule do not apply unless the rule applies. Accord In The Matter of Sherrick (May 8, 1998), Clark App. No. 97-CA-18, unreported; Webster. In Webster we noted that because the father moved for custody prior to the paternity determination, there was no prior custody decree at the time the father moved for custody. In Sherrick the court noted that no prior support order existed.
In conclusion, we emphasize that in the case sub judice no prior custody order exists and no prior child support or visitation order exists from which we can infer that appellant had custody of the child. Although appellant signed a document acknowledging paternity of the child, neither party was ordered to pay child support or granted visitation at that time. Although the parties had a prior agreement concerning custody, the agreement was not incorporated into a court order. Until appellee filed the instant petition for custody, neither party sought or received a court order recognizing or assigning custody of the child. Thus, we find that the trial court correctly applied the R.C. 3109.04(B)(1) best interest test when addressing appellee's petition for custody.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
In his second assignment of error, appellant asserts that the trial court's judgment is against the manifest weight of the evidence.
Initially, we note that when reviewing a custody determination, we apply an abuse of discretion standard of review. In Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418,674 N.E.2d 1159, 1162, the court noted that trial courts must be given wide latitude in custody cases:
 "* * * [W]e are mindful that custody issues are some of the most difficult and agonizing decisions a *trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her — including many of the factors in this case — and such a decision must not be reversed absent an abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 523 N.E.2d 846."
An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181; and Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re JaneDoe 1; Berk v. Matthews (1990), 53 Ohio St.3d 161,559 N.E.2d 1301 citing Buckles v. Buckles (1988), 46 Ohio App.3d 102,546 N.E.2d 950.
In the case sub judice, we find no abuse of discretion. The trial court's decision was not unreasonable, arbitrary, or unconscionable. The evidence presented by the parties supports the trial court's findings concerning appellant's lack of cooperation and communication with appellee. A parent's behavior toward the other in this regard is an important factor for the court to consider when making a custody determination. R.C. 3109.04(F)(1)(f) provides as follows:
 (F)(1) In determining the best interest of the child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
* * *
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court[.]
Additionally, we note that R.C. 3109.04(F)(1)(i) provides that once a custody order has been issued and a parent has moved for modification of that order, the trial court may consider whether a parent has "continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court."
Moreover, we agree with the trial court's conclusion that both parties offer appropriate or adequate homes for the child. We note that the court conducted a lengthy evidentiary hearing. The trial court also issued a detailed judgment entry which contained numerous findings of fact. Our review of the evidence reveals ample support for the trial court's decision in this matter. We again note that reviewing courts must give great deference to child custody decisions made by trial courts. SeePater v. Pater (1992), 63 Ohio St.3d 393, 588 N.E.2d 794;Kerstetter v. Kerstetter (Mar. 26, 1993), Lawrence App. No. 92CA01, unreported. The record in the instant case contains sufficient competent, credible evidence to support the trial court's judgment. See C.E. Morris v. Foley Construction Co.
(1978), 34 Ohio St.2d 279, 376 N.E.2d 578; Ross v. Ross (1980),64 Ohio St.2d 207, 414 N.E.2d 426. An appellate court should not substitute its judgment for the trial court when competent, credible evidence supports the trial court's judgment. Therefore, we find that the trial court did not abuse its discretion. See Davis, supra.
Accordingly, based upon the foregoing reasons we overrule appellant's second assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, P.J.: Concur in Judgment Opinion
For the Court
 BY: ________________________ Peter B. Abele, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] Our review of the court file reveals that the judgment appealed from deferred the child support issue for a later determination. Generally, a judgment issued in a parentage action will not be considered a final and appealable order until: (1) the court issues a judgment establishing paternity; and (2) the court issues a child support order based upon the parentage judgment. See Mullins v. Roe (May 15, 1998), Scioto App. No. 97CA2518, unreported, citing Dixon v. Clark Cty. Courtof Common Pleas, Juv. Div. (1995), 103 Ohio App.3d 523, 528,660 N.E.2d 486; Nwabara v. Willacy (Jun. 13, 1996), Cuyahoga App. No. 69786, unreported; Adams v. Jett (Feb. 10, 1995), Montgomery App. No. 14636, unreported; State ex rel. LawrenceCo. Child Support Enforcement Agency v. Ward (Nov. 18, 1996), Lawrence App. No. 95CA40, unreported; State ex rel. Steele v.Lees (Mar. 26, 1998), Meigs App. No. 97CA06, unreported.
In the case sub judice, the April 15, 1998 judgment being appealed does not resolve the child support issue. Rather, the judgment orders that a further hearing be conducted to consider the child support issue. Thus, the April 15, 1998 judgment does not constitute a final and appealable order. Appellant's May 11, 1998 notice of appeal relates to an order that is neither final nor appealable.
We note, however, that on September 28, 1998, the trial court issued an agreed entry that resolved the outstanding child support issue. Accordingly, we will consider appellant's notice of appeal to be a premature notice of appeal and we will fully consider the merits in the instant appeal. See App. R. 4(c).
[2] R.C. 3109.04(B)(1) provides in pertinent part as follows:
 (B)(1) When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children. * * *
[3] R.C. 3109.04(E)(1)(a) provides in full as follows:
 (E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of the residential parent.
 (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.