OPINION
Appellants, Mary and Donald Theaderman, appeal the decision of the Brown County Court of Common Pleas, Juvenile Division, granting permanent custody of their minor children to the Brown County Department of Jobs and Family Services ("BCDJFS"). We affirm the decision of the trial court.
Appellants are the biological parents of Keri, born on November 9, 1985, and Anthony, born on October 17, 1986. Keri suffers from moderate mental retardation; Anthony suffers from mild mental retardation.
On December 16, 1998, the trial court adjudicated Keri and Anthony to be dependent children. The children remained with appellants pending the trial court's disposition.
The trial court later awarded temporary custody of Keri and Anthony to BCDJFS. Appellants were uncooperative with BCDJFS and their home was unsanitary. In an effort to reunite Keri and Anthony with appellants, the trial court adopted a case plan that included anger management, parenting classes, family counseling, psychological evaluations, financial assistance and visitation with the children. The trial court suspended appellants' visitation with Keri and Anthony six months later when Mary's minor daughter, Nina, accused Donald of engaging in sexual contact with her.
On March 18, 2000, BCDJFS filed a motion seeking permanent custody of Keri and Anthony. BCDJFS alleged that the children had resided out of appellants' home for twelve out of twenty-two consecutive months, and that appellants failed to remedy the conditions that had led to the removal of the children.
The trial court held a hearing on the matter. The trial court also interviewed Keri and Anthony in camera upon appellants' request. The trial court concluded that it was in the best interest of the children to grant permanent custody of them to BCDJFS. Appellants appeal the decision of the trial court and raise two assignments of error for review.
Assignment of Error No. I:
 THE TRIAL COURT ERRED WHEN IT AWARDED PERMANENT CUSTODY OF APPELLANT'S [SIC] CHILDREN TO BROWN COUNTY DEPARTMENT OF JOBS AND FAMILY SERVICES.
In their first assignment of error, appellants assert that the trial court erred by granting permanent custody of Keri and Anthony to BCDJFS for two reasons. Appellants first maintain that the trial court should have denied the motion for permanent custody because BCDJFS did not file an adoption plan for Keri and Anthony pursuant to R.C. 2151.413(E). Second, appellants essentially argue that the trial court lacked sufficient evidence to conclude that it was in the best interest of the children to grant permanent custody to BCDJFS.
 A. Failure to File Adoption Plan
R.C. 2151.413(E) states:
 Any agency that files a motion for permanent custody under this section shall include in the case plan of the child who is the subject of the motion, a specific plan of the agency's actions to seek an adoptive family for the child and to prepare the child for adoption.
R.C. 2151.413(E) does not specify the time at which an adoption plan must be filed, although it does require the agency to file a plan. As such, we have held that the section does not require an agency to file an adoption plan before permanent custody is granted. Inre Cavender (Mar. 19, 2001), Madison App. No. CA2000-06-037, unreported; see, also, In re McCutchen
(Mar. 8, 1991), Knox App. No. 90-CA-25, unreported.
Indeed, an agency cannot know whether adoption is a viable option before permanent custody is granted. See id. Requiring an agency to file an adoption plan before parental rights are terminated would undermine an agency's reunification efforts and cause additional work that may be rendered moot if permanent custody is denied. Id. Requiring a court to dismiss a motion for permanent custody when an agency has not filed an adoption plan places procedure over the child's best interests.Id.
Therefore, the failure of BCDJFS to file an adoption plan for Keri and Anthony did not prohibit the trial court from awarding permanent custody to BCDJFS.
 B. Grant of Permanent Custody to BCDJFS
Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met before parental rights may be terminated. Id. at 769, 102 S.Ct. at 1403. "Clear and convincing evidence" requires that the proof "produced in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. A reviewing court will not reverse a finding by a trial court that the evidence was clear and convincing unless there is a sufficient conflict in the evidence presented. Id. at 479.
A trial court may not award permanent custody of a child to a state agency unless the agency satisfies two statutory factors. First, the agency must demonstrate that an award of permanent custody is in the best interest of the child. R.C. 2151.414(B)(2). Second, the agency must show that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.Id.
When determining whether it would be in the best interest of the child to grant permanent custody of the child to an agency, a juvenile court should consider all relevant factors, which include but are not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
In this case, the trial court found by clear and convincing evidence that it would be in the best interest of Keri and Anthony to award permanent custody to BCDJFS. The record demonstrates that both children have been in the custody of BCDJFS for almost two years, during which time appellants failed to remedy the conditions that led to the removal of the children. The wishes of the children as expressed through the guardian ad litem indicate that it would be in the best interest of the children to grant custody of them to BCDJFS. The guardian ad litem also reported that appellants have "zero" parenting skills and, as such, Keri and Anthony need a legally secure placement that can only be provided by granting permanent custody to BCDJFS. Thus, there is sufficient evidence in the record for the trial court to formulate a firm belief or conviction that it is in the best interest of Keri and Anthony to grant permanent custody to BCDJFS.
In addition to determining the child's best interest, however, the court must make a second determination before granting permanent custody: it must determine whether the child can be placed with a parent within a reasonable time or should not be placed with the parent. R.C.2151.414(B)(1)(a). The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply, including the following:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 (5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 (6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section * * * 2903.21, * * * [or] 2907.07 * * * of the Revised Code and the child or a sibling of the child was a victim of the offense * * * and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
* * *
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 (15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
(16) Any other factor the court considers relevant.
The trial court specifically found in this case that the psychological, emotional, educational and social — economic makeup of the parents prevent the formulation of a course of treatment that would permit the return of the children to a safe home environment within a reasonable time. The past history of parental neglect and indifference to the needs and safety of the children cannot be ignored as factors in determining whether the children should ever be placed with either parent.
The record in this case amply demonstrates that appellants failed to remedy the conditions that caused the children to be removed from the home. Appellants' home was absolutely filthy when Keri and Anthony were removed. The home was infested with roaches, and animal feces were on the floor. By the time of the dispositional hearing, appellants were homeless and residing in a motel. Appellants admitted that as many as twelve different men sexually abused Keri while in their care. Donald confessed that he received cigarettes, cigars and soda pop in return. Mary confessed to knowledge of the acts, but did nothing to protect Keri.[1] During the pendency of the case, Donald was convicted of sexual imposition and importuning. The victim was the children's half sister, Nina. The trial court correctly found that the children cannot and should not be placed with appellants.
Thus, there is clear and convincing evidence in the record to support the trial court's determination that it is in the best interest of Keri and Anthony to grant permanent custody to BCDJFS, and that they cannot and should not be placed with appellants. Accordingly, appellants' first assignment of error is overruled.
Assignment of Error No. II:
 THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S [SIC] MOTION TO BE PROVIDED WITH A COPY OF THE COURT'S IN-CAMERA [SIC] INTERVIEW WITH APPELLANT'S [SIC] MINOR CHILDREN FOR USE IN THEIR APPEAL.
In their second assignment of error, appellants argue that the trial court erred by denying them the opportunity to review the transcript of the in camera interviews conducted with Keri and Anthony. Although appellants requested that the court conduct the in camera interviews, they now contend that the transcript of the interviews may "conceal misconception, false beliefs or lies."
In denying appellants' motion to review the transcript, the trial court relied upon R.C. 3109.04(B)(3), which provides, in part:
 No person shall obtain or attempt to obtain from a child a written or recorded statement or affidavit setting forth the child's wishes and concerns regarding the allocation of parental rights and responsibilities concerning the child.
 The trial court reasoned that this section evinces legislative intent to proscribe parties from obtaining access to recorded in camera interviews.
Initially, a distinction must be made between a determination of custody in a juvenile court and a placement or adoption of a child after a finding that the child is abused, neglected, dependent, delinquent or unruly. R.C. 3109.04 applies to the former; R.C. 2151.353, 2151.354 and 2151.355 apply to the latter. In re Shott (1991), 75 Ohio App.3d 270,274; compare R.C.2151.23(A)(1) (stating juvenile court has exclusive original jurisdiction of any child alleged to be abused, neglected, dependent, delinquent or unruly) with R.C. 2151.23(F)(1) (noting that the juvenile court shall exercise jurisdiction in custody matters in accordance with R.C. 3109.04). R.C. 3109.04 has no relevance to motions for permanent custody of a child filed by a county department or board that has temporary custody of a child since it concerns allocation of parental rights and responsibilities. See Miller v. Miller (1998),37 Ohio St.3d 71, 75; In re Wells (1995), 108 Ohio App.3d 41, 45. Therefore, the trial court erred by citing R.C. 3109.04 as authority for denying appellants the opportunity to review interviews conducted pursuant to R.C. 2151.353.
While R.C. 3109.04 does not apply to dispositional hearings for children adjudicated as abused, dependent or neglected, neither does R.C. Chapter 2151 address whether the trial court may disclose in camera
interviews with parents.
It is important to note that the issue at the dispositional stage involves a determination of what action is in the child's best interests. See, e.g., In re Baby Girl Baxter (1985), 17 Ohio St.3d 229,232. To assist the trial court in this determination, "any evidence that is material and relevant, including hearsay, opinion and documentary evidence," is admissible. R.C. 2151.35(B)-(2)(b); Juv.R. 34(B)(2). The admission or exclusion of any relevant, material evidence is solely within the sound discretion of the trial court. In re Brown (2001),142 Ohio App.3d 193, 197. Medical examiners and investigators testifying at a dispositional hearing are generally not permitted to be cross-examined, except as the trial court, in the exercise of its discretion, may permit. R.C. 2151.35(B)(2)(c); Juv.R.(B)(3).[2]
In accordance with these rules, we hold that a trial court, in a dispositional hearing, has the discretion to determine whether the circumstances of a particular case warrant the disclosure of the transcripts of in camera interviews conducted for the purposes of ascertaining the best interest of a child adjudicated to be abused, neglected or dependent. The trial court should balance the potential harm disclosure presents to the child with the benefit of access. In keeping with the legislative purpose for a dispositional hearing, a consideration of whether disclosure is in the best interest of the child must be paramount. An in-chambers interview provides a secure setting for a minor child to candidly express his or her feelings. Recording of the interview protects all of the parties by allowing an appellate court to determine, to the extent it was relied upon by the trial court, whether the trial court made proper findings.
Turning to the facts of this case, we conclude that the trial court did not abuse its discretion by denying appellants the opportunity to review the transcript. Appellants' justification for access to the transcript of the children's testimony was to prepare an appeal to this court on the basis that it may contain "false beliefs or lies." Essentially, appellants sought to challenge the weight and credibility of testimony provided to the trial court by Keri and Anthony. Determinations of credibility and weight of the testimony are within the province of the trial court because it, not an appellate court, is in the best position to weigh the evidence and evaluate the testimony. In re Brown (1994),98 Ohio App.3d 337, 342. There is overwhelming evidence in the record for the trial court to have independently determined that it was in the best interest of the children to grant permanent custody to BCDJFS without reference to any statements the children expressed during the incamera interviews. Therefore, the trial court did not abuse its discretion by keeping the contents of the children's interviews confidential. Appellants' second assignment of error is overruled.
Judgment affirmed.
WALSH, J., concurs.
VALEN, P.J., concurs in part and dissents in part.
[1] Despite an earlier confession to investigators, Mary denied knowledge of the sexual abuse during the dispositional hearing.
[2] The rules regarding the admissibility of evidence during the dispositional hearing may be contrasted with those during the adjudicatory hearing, where there must be strict adherence to the Rules of Evidence. In re Baby Girl Baxter, 17 Ohio St.3d at 233.