This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Sean Hutchison, appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. We affirm.
 I.
{¶ 2} On March 27, 2000, Mr. Hutchison filed a complaint for custody of his minor son, Tre'sean (hereinafter referred to as "Tre"), born July 3, 1995. Yvette Henderson, Tre's mother, had recently relocated from Akron, Ohio to Atlanta, Georgia. Mr. Hutchison, who resided in Akron, and Ms. Henderson had never been married. Tre had primarily resided with his mother since birth but spent significant amounts of time with each of his parents throughout his life.
{¶ 3} On June 4, 2001, the magistrate issued a decision and the Summit County Court of Common Pleas, Juvenile Division adopted the decision. Thereafter, Mr. Hutchison filed objections to the magistrate's decision. The magistrate's decision and objections were subsequently transferred from the Summit County Juvenile Court to the Summit County Domestic Relations Court.
{¶ 4} On August 8, 2001, the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, overruled the objections, noting that Mr. Hutchison had not followed the correct procedure in objecting to the magistrate's decision. On August 15, 2001, Mr. Hutchison filed a motion for reconsideration and, on November 1, 2001, the Summit County Court of Common Pleas, Domestic Relations Division granted the motion for reconsideration and vacated its August 8, 2001 journal entry. In the same journal entry, the court overruled Mr. Hutchison's objections to the magistrate's decision and designated Ms. Henderson as the residential parent and legal custodian of Tre. Mr. Hutchison was to have parenting time with Tre during the summer and certain holidays. This appeal followed.
 II.
{¶ 5} Mr. Hutchison asserts four assignments of error. To facilitate review, we will consider the second and third assignments of error together.
 A. First Assignment of Error {¶ 6} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT APPLIED THE BEST INTEREST OF THE CHILD TEST RATHER THAN THE CHANGE OF CIRCUMSTANCE TEST IN NAMING THE DEFENDANT RESIDENTIAL PARENT OF THE MINOR CHILD."
{¶ 7} In his first assignment of error, Mr. Hutchison asserts that the trial court erred when it designated Ms. Henderson as the residential parent based upon the determination that it was in Tre's best interest to reside with his mother throughout the school year. Specifically, Mr. Hutchison asserts, the trial court erred because it should have applied the change of circumstances test as enumerated in R.C. 3109.04(E)(1)(a) and considered whether a change had occurred in the circumstances of the child.
{¶ 8} R.C. 3109.04(B)(1) governs initial custody awards and requires that a trial court making an initial custody award apply a "best interest of a child" test. See In re Shepard (Mar. 19, 1999), 4th Dist. No. 98CA2586. In applying this test, a court should consider all relevant factors, including, but not limited to, those set forth in R.C.3109.04(F)(1)(a-j). See, generally, Graves v. Graves (July 24, 2002), 9th Dist. No. 3242-M, 2002-Ohio-3740, ¶ 34. R.C. 3109.04(E)(1)(a) governs the modification of a prior custody decree and prohibits any modification unless the party requesting the modification demonstrates: "(1) a change in circumstances; (2) the modification is in the best interest of the child; and, (3) one of the conditions set forth in R.C.3109.04(E)(1)(a)(i-iii)." In re Faulhaber (June 28, 2002), 11th Dist. No. 2001-P-0110, 2002-Ohio-3380, ¶ 22. In determining the second factor, the best interest of the child, a court again should consider all relevant factors, including, but not limited to, those set forth in R.C.3109.04(F)(1)(a-j). Id. at ¶ 26.
{¶ 9} Several Ohio courts have held that, when paternity has been adjudicated with a corresponding child support order, the natural parent who has raised an illegitimate child since birth and maintained physical custody of that child becomes the de facto residential parent, and that, further, when that child's other parent moves the court for custody, such other parent will need to meet the change of circumstances standard provided in R.C. 3109.04(E)(1). See, generally, In re Wells (Dec. 26, 1995), 108 Ohio App.3d 41, 44. Mr. Hutchison cites to this line of cases in support of his argument that, as Ms. Henderson had always been Tre's primary care-giver, it was error for the trial court to conduct a best interest analysis rather than determine that there had been a change of circumstances.
{¶ 10} In the present case, without deciding whether the trial court should have made the determination as an initial custody award or as a modification of a prior custody decree, we find that Mr. Hutchison has not been prejudiced by any consideration of the trial court as to what would was in the best interest of Tre. While Mr. Hutchison is correct in that a court considering a modification of a prior custody decree, pursuant to R.C. 3109.04(E)(1)(a), must consider whether there has been a change of circumstances, this is not the sole factor in the determination. See Duning v. Streck (June 24, 2002), 12th Dist. Nos. CA2001-06-061, CA2001-06-062, 2002-Ohio-3167, ¶ 11; see, also, In reSydney J. (Jan. 22, 1999), 6th Dist. No. OT-98-023. Rather, as stated previously, the court must also determine that the party requesting modification has demonstrated both that the modification is in the best interest of the child and, also, one of the conditions set forth in R.C.3109.04(E)(1)(a)(i-iii). See In re Faulhaber at ¶ 22.
{¶ 11} Consequently, if, as Mr. Hutchison asserts, Ms. Henderson was the de facto residential parent and he was the party requesting modification, Mr. Hutchison would not only have to demonstrate that there was a change of circumstances but, also, that the modification was in the best interests of Tre. Accordingly, Mr. Hutchison was not prejudiced by a determination that it was in his son's best interest to have Ms. Henderson named as the residential parent. Mr. Hutchison's first assignment of error is overruled.
 B. Second Assignment of Error {¶ 12} "THE COURT ERRED AS A MATTER OF LAW WHEN IT ALLOWED THE DEFENDANT TO RELOCATE THE CHILD TO ATLANTA WITHOUT REQUIRING THE DEFENDANT TO PROVE THAT THE MOVE WAS IN THE CHILD'S BEST INTEREST."
 Third Assignment of Error {¶ 13} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO DESIGNATE PLAINTIFF AS THE MINOR CHILD'S RESIDENTIAL PARENT FOR SCHOOL PLACEMENT AS A RESULT OF THE RELOCATION OF THE DEFENDANT AS SUCH A DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{¶ 14} In his second and third assignments of error, Mr. Hutchison has asserted that the trial court erred in designating Ms. Henderson as the residential parent and allowing Ms. Henderson to relocate Tre to Atlanta. Specifically, he has argued that the decision should be reversed because: (1) Ms. Henderson had not established that it was in her son's best interest to relocate to Atlanta whereas Mr. Hutchison had established that it was his son's best interest to remain in Akron; (2) the trial court's decision was essentially an abuse of discretion and was not in his son's best interest; (3) Mr. Hutchison was prejudiced when Ms. Henderson was not compelled to respond to discovery or found in contempt of court for failure to do so; (4) the Domestic Relations Court indicated in its judgment entry that it would give this matter de novo review and that, therefore, Mr. Hutchison was entitled to a new hearing and evaluation; and, (5) the court erred when it failed to clearly outline a visitation schedule for the parties.[1] Upon consideration, we disagree with each of his assertions.
 Best Interest
{¶ 15} First, we will consider Mr. Hutchison's first and second assertions as they both involve the issue of whether the trial court erred and abused its discretion in finding that it was in Tre's best interest to have Ms. Henderson named the residential parent and allow her to relocate Tre to Atlanta.
{¶ 16} R.C. 3109.04(F)(1) sets forth a nonexclusive list of considerations in determining best interests:
 {¶ 17} "(a) The wishes of the child's parents regarding his care;
 {¶ 18} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 19} "(c) The child's interaction and interrelationship with his parents, siblings, any other person who may significantly affect the child's best interest;
 {¶ 20} "(d) The child's adjustment to his home, school, and community;
 {¶ 21} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 22} "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 {¶ 23} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to child support order under which that parent is an obligor;
 {¶ 24} "(h) Whether either parent has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or neglected child;
 {¶ 25} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 {¶ 26} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
{¶ 27} In a child custody proceeding, the standard of review of a trial court's determination is whether the trial court abused its discretion in making its judgment. Harrold v. Collier (July 31, 2002), 9th Dist. No. 02CA0005, 2002-Ohio-3864, ¶ 7. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
{¶ 28} The evidence presented indicates that both parties are loving and capable parents. In the hearings on this matter, evidence was presented through several witnesses. While the parties are in disagreement on many issues, including the actual period of time that Mr. Hutchison lived with Ms. Henderson and Tre and, also, how long Ms. Henderson was away from Tre during her visits to Atlanta prior to her move, both parties agree that Tre had primarily resided with his mother since birth but spent significant amounts of time with each of his parents throughout his life.
{¶ 29} In the hearings, each party found fault with the other person for numerous reasons including an alleged lack of care of Tre's dental needs by each party, the accusation that Mr. Hutchison can be jealous and possessive, and the allegation that Ms. Henderson irresponsibly left her son in the care of his father to be in Atlanta with the man who is now her fiance. However, each party also acknowledged that the other parent cares for Tre and wants to do what is best for him. All of the witnesses agreed that Tre was a well-adjusted child who did well in school and with other children, including friends in the Akron area and children that he met during visits to Atlanta.
{¶ 30} Ms. Henderson testified that she moved to Atlanta in April of 2000 in order to better her life. She stated that, in Atlanta, she is currently employed, that she has an apartment for her and her two daughters, minors who are not related to Mr. Hutchison, and that her fiance also lives in the area. She testified that Tre is very close to his sisters and that they miss him. Ms. Henderson also testified that she was born and raised in the Akron area. She stated that she has family in Akron but that she also has both family and friends in the Atlanta area.
{¶ 31} At the time of the hearings, Mr. Hutchison had been awarded temporary custody of Tre. When asked, Ms. Henderson explained that, except for the court order requiring Tre to live with his father, Tre had resided with her since his birth. She explained that Tre had often visited with his father, including weekends and during a long trip she had taken to Atlanta prior to her move. Ms. Henderson also explained that, when she first moved to Atlanta, she left her son with Mr. Hutchison because, although Tre appeared to be fine, she had believed that he was still recovering from an ear infection. She explained both that she and Mr. Hutchison agreed that it would be best for Tre to stay with his father for a few weeks and that Ms. Henderson would return to get Tre after she was settled in her new location. Ms. Henderson stated that she and Mr. Hutchison were good friends, always talking over everything and always helping each other.
{¶ 32} Ms. Henderson acknowledged that Tre had a problem with asthma, explaining that she did not smoke when she was around her son because she recognized that it was not good for his health. She testified that Mr. Hutchison currently had Tre enrolled in kindergarten but that, in her opinion, he did not adequately inform her of the child's school progress. She also testified that, since Mr. Hutchison filed for custody, he has sometimes made it difficult for her to both talk and visit with her son.
{¶ 33} Mr. Hutchison testified that he and his fiance currently reside in a house in Akron and that he wanted custody of his son so that Tre could remain in the area. Mr. Hutchison stated that he has deep respect for Ms. Henderson, that he still considers her a friend, and that he has always been in close contact with both her and Tre. Mr. Hutchison stated that Tre has resided with his mother since birth but indicated that he was bothered by some of Ms. Henderson's choices, such as leaving Tre for extended trips to Atlanta or moving Tre to a new city when both of his parents have extended family in the Akron area. However, Mr. Hutchison also acknowledged that Tre was very close with his mother and sisters and that, since he had been living with Mr. Hutchison, Tre talked to his mother often on the telephone. Additionally, Mr. Hutchison testified that Tre had indicated to him that he had a wonderful time on a recent visit to Atlanta with his mother and sisters and that Tre had asked his father if he would be able to go there again.
{¶ 34} Mr. Hutchison testified that Tre has a lot of friends and family in Akron and that, if Tre lived with him, he would make sure that Tre would remain close with them all. Mr. Hutchison also testified that recently, when the guardian ad litem was visiting with Tre and himself, Tre had indicated that he wished to live with his mother in Atlanta. Mr. Hutchison stated that he personally did not discuss the issue of custody with Tre because he felt that the child was too young.
{¶ 35} Mary Fallon, Tre's guardian ad litem, presented her report to the court. She testified that she had seen Tre interact with both his mother and father. She stated that both interact well with Tre but that she noticed that Tre was especially affectionate with his mother. Ms. Fallon also stated that Mr. Hutchison had a very nice house. She did, however, express concern over the fact that Tre had to be careful not to disrupt anything in the house. Ms. Fallon noted that she never witnessed any physical interaction between Tre and his father's fiance.
{¶ 36} Ms. Fallon explained that, with Mr. Hutchison present, she asked Tre where he wanted to live. Ms. Fallon stated that Tre looked at his father and then, without hesitation, declared that he wanted to live with his mother in Atlanta. In summary, Ms. Fallon testified that both parents are sincerely interested in Tre's well-being but that, at Tre's young age, he relies on his mother's emotional warmth and nurturing.
{¶ 37} In the present case, the court clearly considered the aforementioned best interest factors, as well as other factors, and concluded that the evidence supported a finding that it was in Tre's best interest to have Ms. Henderson be named residential parent and permit her to relocate the child to Atlanta. Upon reviewing the evidence, we cannot say that the trial court abused its discretion when it found that it was in Tre's best interest to live in Atlanta with his mother.
 Discovery Requests and Visitation Order
{¶ 38} Second, we will consider Mr. Hutchison's third and fifth assertions together. In the third assertion, Mr. Hutchison generally asserts that he was prejudiced by the court's failure to make Ms. Henderson comply with discovery requests. In the fifth assertion, Mr. Hutchison asserts that the court erred when it failed to clearly outline a visitation schedule.
{¶ 39} "An appellant bears the burden of affirmatively demonstrating error on appeal." In re Hiltabidel (July 17, 2002), 9th Dist. No. 21009, 2002-Ohio-3627, ¶ 58. Pursuant to App.R. 12(A)(2), a court can disregard an assignment of error presented for review if the party raising it does not identify in the record the error on which the assignment of error is based. Id. Additionally, the appellant's brief must contain both argument and law, along with citations to the authorities, statutes, and parts of the record upon which an appellant is relying. Id.; see, also, App.R. 16(A)(7).
{¶ 40} With regard to these assertions, Mr. Hutchison does not point to portions of the record, offer arguments in support of his assertions, or cite to any case law. Moreover, regarding the discovery requests, Mr. Hutchison merely states that he was prejudiced but does not elaborate further. Regarding the allegedly unclear visitation schedule, Mr. Hutchison does not explain why he believes that the visitation schedule is unclear. Accordingly, we shall disregard these alleged errors. See App.R. 12(A)(2); In re Joshua H. (Aug. 28, 1998), 6th Dist. No. L-97-1461.
 De Novo Review
{¶ 41} Third, Mr. Hutchison asserts that, when his case when transferred from the Juvenile Court to the Domestic Relations Court, the Domestic Relations court determined that he was entitled to a de novo review and that, therefore, he was entitled to a new hearing and evaluation. Mr. Hutchison has mischaracterized the language of the Domestic Relations Court as stated in the November 1, 2001 judgment entry. As clearly indicated by the record, this is not what the court meant when it stated that it would review Mr. Hutchison's objections to the magistrate's decision de novo. Rather, the court was referring to the fact that, on August 8, 2001, the trial court overruled Mr. Hutchison's objections because a praecipe had not been filed with regard to the transcripts. Thereafter, Mr. Hutchison filed a motion for reconsideration. In the November 1, 2001 judgment entry, the court was merely referring to its decision to grant the motion for reconsideration and consider the objections to the magistrate's decision based upon the merits of those objections. Mr. Hutchison's argument is without merit.
 C. Fourth Assignment of Error {¶ 42} "THE TRIAL COURT ERRED AND COMMITTED PREJUDICIAL ERROR WHEN IT DID NOT ALLOW THE PARTIES TO CROSS-EXAMINE THE GUARDIAN AD LITEM."
{¶ 43} In his fourth assignment of error, Mr. Hutchison asserts that the trial court erred in considering the guardian ad litem's report without giving him an opportunity to cross-examine the guardian ad litem. Upon consideration, this assignment of error is overruled.
{¶ 44} R.C. 3109.04(C) provides that a trial court can appoint an investigator in a child custody proceeding "to conduct `* * * an investigation * * * as to the character, family relations, past conduct, earning ability, and financial worth of each parent * * *' and to report to the court on its findings. Where a court requests such an investigation and report, `* * * the investigator shall be subject to cross-examination by either parent concerning the contents of the report.'" (Alterations original.) Crosby v. Crosby (June 15, 1993) 9th Dist. No. 92AP-1455, quoting R.C. 3109.04(C).
{¶ 45} In the present case, the record indicates that the guardian ad litem "in essence performed the function of [the child's] advocate and an investigator for the court." Crosby, supra. Specifically, the guardian ad litem conducted an investigation, interviewing the parties and other witnesses prior to the trial, and submitted a recommendation to the court with regard to Tre's best interests. Additionally, throughout the hearings on this matter, the guardian ad litem participated in the examination of the witnesses. Consequently, under these circumstances, "the trial court should have provided the parties an opportunity to cross-examine the guardian ad litem under oath concerning the contents of her reports." Id.
{¶ 46} However, in the case at bar, Mr. Hutchison's counsel did not object to the fact that the court did not permit the parties to cross-examine the guardian ad litem. In fact, counsel did not bring this issue to the attention of the court during the hearings in any manner. On appeal, Mr. Hutchison has waived any error that was not raised below. See id.; see, also, Evans v. Evans (Sept. 20, 2001), 10th Dist. Nos. 00AP-1459, 00AP-1466, 2001-Ohio-8860; see, also, Webb v. Lane (Mar. 15, 2000), 4th Dist. No. 99CA12.
{¶ 47} Furthermore, even assuming that Mr. Hutchison had not waived his right to cross-examine the guardian ad litem, this court finds that any failure to permit cross-examination in this case was not prejudicial error. See, generally, Evans, supra. Specifically, after the guardian ad litem gave her oral report, Mr. Hutchison's counsel was given the opportunity to question the guardian ad litem as to her recommendation. Thereafter, counsel extensively questioned the guardian ad litem with regard to the facts of the case, the guardian ad litem's investigation process, and the basis for her decision. Upon review, we find that the court's decision would not have been different had Mr. Hutchison been permitted to cross-examine the guardian ad litem. Mr. Hutchison's fourth assignment of error is overruled.
 III.
{¶ 48} Mr. Hutchison's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division is affirmed.
CARR, P.J. CONCURS IN JUDGMENT ONLY; WHITMORE, J. CONCURS.
[1] In making his first assertion with regard to whether it had been established that it was in his son's best interest to relocate, Mr. Hutchison points to Smillie v. Lockom (Aug. 18, 2000), 6th Dist. No. WD-99-053. This court notes that this case is distinguishable from the present case because it dealt with a mother who filed a motion for leave to remove her children from the court's jurisdiction in spite of the fact that, as part of their divorce, the parents established a shared parenting plan which entitled the parents to equitably share parental rights and responsibilities.